Hank J. BARTH, Appellee,

v.

Mildred Leota BARTH, Personal Representative of the Estate of Gene Barth, Deceased, Max Barth, Jr., and Victor Barth, Appellants.

No. 84020.

Court of Appeals of Oklahoma, Division No. 1.

May 16, 1995.

Marcus Holcomb, Buffalo, for appellant.

Robert J. Kee, Beaver, for appellee.

### MEMORANDUM OPINION

HANSEN, Presiding Judge:

Appellants, Victor Barth, Max Barth, Jr. and Mildred Barth[1] (collectively Appellants) seek review of the trial court's *Final Decree in Partition,* in which the court ordered partition in kind of certain real property, with owelty[2] to be paid Victor Barth.

Victor and Max Barth, along with their brothers Gene and Bill, entered into an agreement in 1963 concerning common ownership of a portion of the real property now in controversy, and additional real property to be acquired in the future. The brothers

---

1. Mildred Barth, as personal representative of the Estate of Gene Barth, was substituted as a party when Gene Barth, her husband, died during pendency of this action.

2. Owelty is a pecuniary sum awarded to one party in order to equalize shares of the parties to a partition, and is recognized in Oklahoma. *Chesmore v. Chesmore,* 484 P.2d 516 (Okla.1971).

operated a farming and ranching operation on the property. By the terms of the agreement, in the event of the death of a brother, the estate was to sell that brother's one quarter common interest in the property to the surviving brothers. However, when Bill died in 1972, the surviving brothers waived their rights and allowed Appellee, Hank Barth, Bill's son, to continue with Bill's share.

In 1986, Hank sold his interest to Appellants, with an option to repurchase the interest for the same price within five years. Hank gave timely notice that he wanted to repurchase the interest, and when Appellants refused to sell, Hank brought this action seeking specific performance and judgment declaring the 1963 agreement to be of no force or effect. Appellants answered, alleging among other things that Hank's repurchase notice was not in compliance with their agreement, and in the alternative, asked the trial court to partition the property.

After a bench trial, the court found Hank was entitled to have his former one quarter undivided interest reconveyed upon payment of the purchase price, and further ordered partition of the contested property. The trial court appointed three commissioners and instructed them "to make partition of the property among the parties according to their respective interests, if such partition can be made without manifest injury", or "if a partition cannot be made, [to] make a valuation and appraisement of the property".[3]

The court provided the commissioners with alternative reports—one where the commissioners find partition could be made, and the other setting forth valuation and appraisement of the various tracts comprising the commonly held real property. The commissioners, however, completed, signed and returned both of the reports. Appellants objected to the report and sought removal of the commissioners. After a hearing at which the commissioners testified, the trial court determined their intent was to partition in kind, and denied removal. The trial court did, however, resubmit the matter to the commissioners with instructions to determine if tract #1 had been properly valued. Upon resubmission, the court also instructed the commissioners on owelty.

In their supplemental report, the commissioners acknowledged the value of tract #1 had been erroneously determined,[4] but found partition could still be made as previously determined, with owelty paid to Victor by Hank and each of the other two Appellants.[5] Appellants again objected to the commissioners' report. The trial court overruled the objection, confirmed the commissioners' report, and ordered the property partitioned in kind, with owelty to be paid. Appellants seek review of that order.

■ Partition proceedings are of equitable cognizance. *Chesmore v. Chesmore*, 484 P.2d 516 (Okla.1971). In cases of equitable cognizance, we will examine the record as a whole and weigh the evidence, but we will not disturb the judgment of the trial court unless it is clearly against the weight of the evidence. *Carlile v. Carlile*, 830 P.2d 1369 (Okla.1992). In *Carpenter v. Carpenter*, 645 P.2d 476 (Okla.1982), the Supreme Court noted, "[i]t is not fatal to the validity of an equity decision if, on the basis of the evidence presented, the chancellor might have been equally correct in reaching a conclusion different from that which he actually did".

■ Our Supreme Court has also noted, in *Chesmore v. Chesmore*, 484 P.2d at 519, that "[t]he object of partition is a division of the property; a sale of the lands is justified only when partition in kind, with owelty, is impractical". In making divisions along natural and practical lines the allotments cannot always be made of equal area or value, so when an allotment is made in excess of a party's share, the court may require him to pay such excess, that is, owelty, to the other co-tenants. *Chesmore v. Chesmore*, at 518.

3. *See,* 12 O.S.1991 § 1509(A).

4. The record reflects there were only 8.72 acres in Tract #1, rather than 40 acres as originally thought by the commissioners.

5. Victor was to receive $5,315.00 owelty, with Hank paying $3,855.00; Max $1,105.00 and Gene's Estate $355.00.

■ Appellants contend the trial court erred in confirming the commissioner's report because the partition made by the commissioners resulted in manifest injury to each of the Appellants. The property in controversy totalled approximately 1720 acres. The acreage of the parcels as partitioned are—Gene's Estate 520, Hank 480, Victor 400 and Max 320. We noted above that allotments do not have to be equal, and Appellants do not now appear to contest the partition because of the size of the areas allotted, but because of alleged disparate values and resulting changes in utility of the land partitioned.

■ The parcels allocated to Gene's Estate, Hank and Max are contiguous within themselves and to each other. The parcel allocated to Victor is composed of two tracts separate from the other parcels and approximately two miles apart, with a county line road running through both tracts. The southern tract adjoins land owned severally by Victor. The commissioners testified they considered this latter fact in making the partition. Such consideration is proper, and, in fact, the trial court's failure to allot land to an adjoining owner in a partition resulted in appellate modification of the partition order in *Flippo v. Nelson*, 792 P.2d 99 (Okla.App. 1990).

The Barth Ranch, while operated in common, was run as a "combination cattle-wheat unit". Appellants testified that was the most efficient use of the property. Appellants now contend operation of the land is materially changed because the farmland-grassland ratio in the land allotted to Max and Gene's Estate restricts Max to farming and Gene's Estate to ranching. Appellants also assert Victor, who could continue a cattle-farming operation, is disadvantaged "in that his small farming acreage are not fenced separately".

Even presuming the correctness of Appellants contentions concerning the preferable method of utilizing the partitioned property, they failed to establish as a matter of record that each parcel of the property, as partitioned, may not be successfully operated in some other fashion. The commissioners all ran similar farm-ranch operations in the same area as the contested property. They knew the Barth family, how they ran their operations, and knew where the parties owned their several properties. The commissioners testified they took all these matters into consideration in the partition, and believed the partition was equitable and manageable.

Appellants further assert that the 36 acres of farmland allotted to Gene's Estate will require a road built to gain access. However, the commissioners testified they drove down a section line to view the property; Appellants' own expert appraisal witness stated he did not consider the land inaccessible; and Appellee Hank Barth testified a road existed and the county was willing to reopen and maintain it. Similarly controverted is Appellants' contention that government crop allotments will be far out of balance with the partition. Victor Barth acknowledged he could not be sure exactly what would happen to the crop allotments after partition. Hank Barth, on the other hand, testified he had determined from the appropriate officials that the allotments would be equitably reapportioned after the property was partitioned.

Concerning Appellants' asserted disparity in values of the allotted parcels, we again find the clear weight of the evidence does not show manifest injury to Appellants. The land was valued by the commissioners and by Appellants' expert witness, appraiser David Story. The values determined by both for Victor's parcel, after the commissioners' appraisal is adjusted for correction of acreage in tract #1, is substantially the same. However, Appellants' expert appraised the other three parcels significantly higher than the commissioners' appraisal, and appraised Appellee's parcel proportionally even higher. On the other hand, the commissioners' values, after owelty payments, are substantially the same for all four parcels.

The commissioners, by their own experience and acquaintance with the parties and the parties' methods of operation, were competent appraisers to determine the respective values and viability of the partitioned parcels. There is no evidence of partiality or bias on the part of the commissioners and Appellants allege none.

Mr. Story acknowledged he had not taken into consideration any increase in value resulting from part of Victor's allotted land being contiguous to land Victor already owned. Mr. Story's appraisal of Victor's parcel was also affected by his impression it was more severely infested by bindweed than the others. There is conflicting evidence on that point from Appellants and Appellee.

It is not enough, however, that the trial court *could have* reached a different conclusion from the evidence. It was Appellant's burden to show that the trial court's judgment was clearly against the weight of the evidence, and we find they failed to meet that burden. We further find the trial court's confirmation of the commissioners' report was no mere "rubber stamp" approval. The court reinstructed the commissioners when it appeared they had erred, and heard considerable evidence before confirming the commissioners' supplemental report.

■ Partition in kind is favored, *Chesmore v. Chesmore*, 484 P.2d at 518, and in the absence of Appellants showing manifest injury, we find the trial court committed no error requiring reversal. Accordingly, the trial court's judgment is AFFIRMED.

CARL B. JONES and JOPLIN, JJ., concur.